**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:22-cr-61-KDB-DCK-1**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>LENEIL RANDOLPH GREEN, )<br>)<br>Defendant. )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's pro se Motion to Vacate Conviction and Sentence Under 28 U.S.C. Section 2255 [Doc. 27].

The Defendant was charged with seven counts of distribution of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) on July 21 and 27, 2022, August 4 and 23, 2022, and September 7 and 27, 2022 (Counts One through Six); and § (b)(1)(B) on October 18, 2022 (Count Seven). [Doc. 1: Indictment]. The Defendant pleaded guilty to Count One in exchange for the Government's dismissal of the remaining counts. [Doc. 15: Plea Agreement at ¶¶ 1-2].

The written Plea Agreement sets forth Petitioner's sentencing exposure of a maximum term of 20 years' imprisonment. [Id. at ¶ 5]. The parties agreed to jointly recommend that: the amount of fentanyl that was known to or reasonably foreseeable by Defendant was at least 260 grams but less than 280 grams; the plea is timely for purposes of acceptance of responsibility, if applicable; and if the Court determines from the Defendant's criminal history that U.S.S.G. § 4B1.1 (Career Offender) or U.S.S.G. § 4B1.4 (Armed Career Criminal) applies, such provision may be used in determining the sentence. [Id. at ¶ 8]. The parties remained free to seek a departure or variance from the applicable guideline range, and to argue their respective positions regarding

any other specific offense characteristic, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level. [Id.]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines in determining the sentence; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that the Defendant read and understood the written Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 10]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 11].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. [Id. at ¶¶ 12-14]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. [Id. at ¶ 15]. The Defendant expressly waived "all rights to

2

contest the conviction and sentence in any appeal or post-conviction action" except for claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶ 16]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 22].

The written Factual Basis provides that the Defendant knowingly distributed fentanyl on July 21, 2022, and that the amount of fentanyl known to or reasonably foreseeable by the Defendant, including all relevant conduct, was at least 160 grams but less than 280 grams. [Doc. 16: Factual Basis].

The Defendant stated under oath at a Rule 11 hearing that: he fully understood the charges and the maximum and minimum penalties he faced; he had discussed with his attorney how the U.S. Sentencing guidelines may apply to his case; he understood the Court will not be able to determine the applicable sentencing range until after the Presentence Report (PSR) is prepared and Defendant has the opportunity to comment on it; and he will have no right to withdraw the plea if the sentence is higher than Defendant expects. [Doc. 17: Acceptance at 1-2]. The Defendant acknowledged the rights he was waiving by pleading guilty and the consequences of his plea. [Id. at 2-3]. The Defendant stated that he understood the terms of the Plea Agreement including the appellate and post-conviction waivers. [Id. at 3]. He stated that he read and understood the Factual Basis and that he agreed with it. [Id.]. He confirmed that nobody threatened, intimidated, or forced him to plead guilty and nobody made him promises of leniency or a light sentence other than the terms of the Plea Agreement. [Id.]. The Defendant had enough time to discuss possible defenses with his attorney and he was satisfied with counsel's services, stating "she explained everything

3

to me and helped me a lot." [Id.]. The Defendant admitted that he is, in fact guilty of the charge to which he was pleading guilty. [Id.].

The Presentence Investigation Report (PSR) scored the base offense level as 26 because the offense is a violation of § 841(a)(1) and it involved at least 160 grams but less than 280 grams of fentanyl. [Doc. 22: PSR at ¶ 28]. Two levels were added because a dangerous weapon (including a firearm) was possessed, pursuant to U.S.S.G. § 2D1.1(b)(1). [Id. at ¶ 29]. This resulted in adjusted offense level subtotal of 28. [Id. at ¶ 33]. However, the Defendant qualifies as a career offender because: he was at least 18 years old at the time of the offense of conviction; the offense is a felony that is a crime of violence or a controlled substance offense; and the Defendant has at least two prior felony convictions for a crime of violence or a felony drug offense, i.e., Norfolk, VA Circuit Court Case Nos. CR04003693 and CR08001237 for possession of cocaine with intent to distribute, and Catawba County, NC Superior Court Case No. 18CRS050932 for second-degree kidnapping. [Id. at ¶¶ 34, 43, 48, 55]. Accordingly the offense level is 32 pursuant to U.S.S.G. § 4B1.1(b)(3). [Id. at 34]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 29. [Id. at ¶¶ 35-37]. The Defendant had a criminal history score of nine and a criminal history category of IV, however, the criminal history category for career offenders is VI. [Id. at ¶¶ 61-63]. This resulted in an advisory guideline range of 151 to 188 months' imprisonment followed by three years of supervised release. [Id. at ¶¶ 103, 106].

Defense counsel sought a downward variance based on factors including the Defendant's learning struggles, his untreated drug dependency, and the career offender guideline. [Doc. 24: Sentencing Memo.]. As to the career offender guideline, counsel argued that: Defendant has mixed predicates (one crime of violence and two prior drug offenses); the prior drug convictions were for small quantities; the career offender guideline raised Defendant's criminal history by more than

4

two categories; and many defendants sentenced under the career offender guidelines receive a significant downward variance. [Id.]. Counsel therefore requested a three-level reduction to 120 months' imprisonment. [Id.].

The Court accepted the PSR without change and granted Defendant's request for a variance. [See Doc. 26: Statement of Reasons]. The Court accordingly sentenced the Defendant to 132 months' imprisonment followed by three years of supervised release in a Judgment entered on November 3, 2023. [Doc. 25: Judgment]. The Defendant did not appeal.

The Defendant filed the instant § 2255 Motion to Vacate on April 10, 2024.[1] [Doc. 27]. He argues that counsel provided ineffective assistance for failing to argue that he does not qualify as a career offender because the 2004 and 2008 Virginia cocaine convictions are not categorically drug offenses under the Controlled Substances Act; and that the 2004 cocaine conviction is not a "felony" and falls outside the 10-year timeframe for career offender predicates. He asks the Court to set aside his sentence and to resentence him without the career offender enhancement. The Government filed a Response arguing that the Motion to Vacate should be dismissed and denied because the Defendant's prior convictions qualify as "controlled substance offenses" and counsel was not ineffective for failing to raise meritless objections. [Doc. 31]. The Defendant was granted an extension of time to reply. [July 15, 2015 Text-Only Order]. However, the Defendant has not replied and the time to do so has expired. Accordingly, this matter is ripe.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a defendant must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

6

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, a defendant "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the defendant fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted). When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

A defendant is a career offender if he was at least 18 years old at the time he committed the instant offense of conviction, the instant offense is a felony that is either a crime of violence or a controlled substance offense, and the defendant has "at least two prior felony convictions of either a crime of violence or a controlled substance offense."[2] U.S.S.G. § 4B1.1(a). A "controlled substance offense" is "an offense under federal **or state law**, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, export, distribution, or dispensing of a

---

[2] The Defendant does not challenge the age requirement. Nor does he challenge his North Carolina kidnapping predicate's qualification as a crime of violence. [See Doc. 22 at ¶¶ 34, 55].

controlled substance … or the possession of a controlled substance … with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (emphasis added).

The Fourth Circuit has held that the Virginia statute prohibiting possession of cocaine with intent to distribute qualifies categorically as a controlled substance offense for the purposes of the career offender enhancement. United States v. Ward, 972 F.3d 364, 372-74 (4th Cir. 2020). The Fourth Circuit does not require a state statute to be identical to the federal Controlled Substances Act for it to qualify as a controlled substance offense. Id. Accordingly, this challenge to the Defendant's 2004 and 2008 Virginia convictions for possession of cocaine with intent to distribute is unavailing.

The Defendant's contention that the 2004 Virginia conviction does not qualify as a "felony" because he served less than a year in prison fails because there is no requirement that an offender must have served more than one year for a conviction to be considered a felony. The offense must only be "punishable" by more than one year in prison. U.S.S.G. § 4B1.2(a). The Defendant's 2004 conviction satisfies that requirement. [See Doc. 22 at ¶ 43 (Defendant was sentenced to five years' imprisonment, with four years and five months of which was suspended)].

The Defendant's contention that the 2004 conviction was stale also fails. Section 4A1.2(e)(1) of the U.S. Sentencing Guidelines Manual provides that:

> [a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

Further, "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." U.S.S.G. § 4A1.2(e)(2). In the case of a revocation of probation, the original term of imprisonment should be added to any term of

8

imprisonment imposed upon revocation. U.S.S.G. § 4A1.2(k). The resulting total is then used to compute the criminal history points. Id. Here, the Defendant's probation was revoked on October 24, 2008 at which time he was sentenced to four years and five months' imprisonment, with three years and eleven months of the sentence suspended. [Id.]. This means that the Defendant was sentenced to one year and one month within 15 years of the instant 2022 offenses. United States v. Romary, 246 F.3d 339, 342-43 (4th Cir. 2001) (finding that a revocation sentence was punishment for the original offense, such that it was properly counted for career offender purposes, even though original offense was not imposed within 15 years of the current offense); United States v. Faison, 840 F. App'x 736 (4th Cir. 2021) (same). Moreover, even without the 2004 conviction, the Defendant still had at least two qualifying prior convictions to support the career offender enhancement, i.e., the 2008 Virginia conviction and the North Carolina kidnapping conviction. [See Doc. 22 at ¶¶ 48, 55]. As such, the Defendant had at least two qualifying career offender predicates even if the 2004 conviction is disregarded.

The Defendant has failed to demonstrate that counsel performed deficiently by failing to raise these meritless arguments, or that he was prejudiced by the same. Accordingly, his claims of ineffective assistance of counsel are rejected.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 27] is **DISMISSED AND DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section

2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: August 9, 2024

Kenneth D. Bell
United States District Judge